# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Deanne Sopelle, for A.N.S.,                          Civ. No. 09-3022 (PJS/JJK)

      Plaintiff,

v.

Michael J. Astrue,                          **REPORT AND RECOMMENDATION**
Commissioner of Social
Security,

      Defendant.

Sean M. Quinn, Esq., Falsani, Balmer, Peterson, Quinn & Beyer, counsel for Plaintiff.

Lonnie F. Bryan, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Deanne Sopelle seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"), who denied Plaintiff's application for supplemental-security income. The parties have filed cross-motions for summary judgment. (Doc. Nos. 7, 14.) This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion be denied, and Defendant's motion be granted.

**Background**

The claimant, A.N.S., was born March 20, 2000. (Tr. 12.)[1] The claimant's

mother, Deanne Sopelle, filed an application for supplement-security income

benefits on December 1, 2005. (Tr. 139–44.) That application was denied by the

Social Security Administration on June 23, 2006. (Tr. 113–16.) On December

29, 2006, Ms. Sopelle requested a hearing before an Administrative Law Judge

("ALJ") to challenge the Social Security Administration's findings. (Tr. 123.) A

hearing was held before ALJ James Geyer on May 21, 2008. (Tr. 51–110.)

At the beginning of the hearing, Plaintiff informed the ALJ that Ann

Johnson, the personal care assistant to A.N.S., had not updated her records to

fill out the childhood disorder form. (Tr. 55.) The ALJ agreed to keep the record

open for two weeks so that Plaintiff could obtain this information. (Tr. 55.) The

ALJ then proceeded with the hearing, which lasted approximately an hour and a

half, with questioning of the claimant and of the claimant's mother. Dr. Mary

Stevens, a licensed psychologist, was the medical expert present at the

proceedings to advise the ALJ. (Tr. 53.) Near the end of the hearing, after

realizing what records Dr. Stevens had missing from her file, the ALJ asked

Dr. Stevens whether she would feel more comfortable testifying by

interrogatories after having a chance to look at the entire record. (Tr. 106.)

---

[1] Throughout this Report and Recommendation, reference to the administrative transcript for the present case, Civ. No. 09-3022 (PJS/JJK), is made by using the abbreviation "Tr."

Dr. Stevens stated that she would. (Tr. 106.) Specifically, she stated that she would like to review a report by Dr. Leslie Russell (Tr. 106–07), reports 11E–13E (Tr. 108), exhibits after 25F (Tr. 106), and the most recent copy of A.N.S.'s report card. (Tr. 108.)

At that point, the following conversation took place between the ALJ and Plaintiff's attorney:

> ALJ: Well, why don't, counselor, if you would see if you could Dr. Russell's evaluation, I'd get it added to the CD and we can send the CD to Dr. Stevens and have her respond to interrogatories and go from there.
>
> ATTY: I actually submit everything through you, right, Judge?
>
> ALJ: Yeah, yeah.
>
> ATTY: If you would get that, if you would, we're near the end of the school year, so if you ma'am, could you get us a copy of the report card, get it to your attorney so we can get a copy of his report card this year.
>
> WTN: Uh-huh.
>
> ALJ: Okay. And then Dr. Russell's report. Once we get that Russell's report added, then we can send to Dr. Stevens along with all of these other records and, and get a - -
>
> ATTY: And including 11E, I think.
>
> WTN: Yes.
>
> ALJ: Yes, all of that stuff will be on the CD.
>
> ATTY: Oh, she'll get a brand new CD, okay.
>
> ME: Right.

3

ALJ:  And then we'll send her some written questions and see what her responses are and you were going to get something from the prior - -

ATTY:  Ms. Johnson.

ALJ:  Yeah, Ms. Johnson, Ms. Johnson.  If we could get that - -

ATTY:  All the ones and get that - -

ALJ:  Yeah, get it to, to Dr. Stevens and get her report back.  Once I get a report back from Dr. Stevens, I have to provide a copy to your attorney.  He gets time to make any comments he has.  I believe you even have the right to ask for another hearing on her testimony if, if you think that's necessary.  But we aren't near there yet.

ATTY:  Well, we'll wait and see what happens first.

ALJ:  Yeah, we aren't there yet.  At any rate, once we get all of that folder all done, then I can finally make my decision and it's even likely to be sometime after [t]hat before we get a written decision to you so it's going to be a while.  Try to be patient with us . . . .

(Tr. 108-09.)

On September 8, 2008, after receiving the missing records, the ALJ issued his decision without ever forwarding the records on to Dr. Stevens for her review and without ever posing additional interrogatories to her.  (Tr. 38.)  He found that A.N.S. had been diagnosed with an autism spectrum disorder, emotional disturbances of childhood, and a mineral metabolism disorder, and that the resulting impairments were "severe" by the Social Security definition.  (Tr. 22–29.)  However, the ALJ also determined that despite the severity of the impairments, they did not "alone or in combination, meet or medically equal any impairment listed."  (Tr. 29; 29–38.)  Therefore, the ALJ found that A.N.S. is not

4

disabled as defined by the Social Security Act at any time from November 23, 2005, to the date of his decision.  (Tr. 38.)

Also, in his decision, the ALJ stated the following:

Following hearing, the record remained open for Attorney Quinn to obtain and submit additional documentation and, if necessary, to secure interrogatories from Dr. Stevens.  Said documentation was received and was entered into evidence as Exhibits 13-E, 36-F, 37-F, and 38-F.  Following review of the record in its entirety, the undersigned determined that sufficient documentation existed upon which to make a decision in this matter and that interrogatories to Dr. Stevens were unnecessary.  Therefore, the record was closed pending written decision.

(Tr. 12.)

On October 4, 2008, Plaintiff requested the Appeals Council to review the ALJ's decision.  (Tr. 5–8.)  To support Plaintiff's request for review, she included medical reports from examinations subsequent to the hearing with the ALJ.  (Tr. 39–50.)  Plaintiff argued that "[a]t the time of the hearing, the record was incomplete" because the ALJ did not have the results from Dr. Stevens' findings.  (Tr. 6–7.)  Plaintiff also asserted that the ALJ incorrectly labeled inconsistencies in the record as "contradictions."  (Tr. 7–8.)  The Appeals Council denied Plaintiff's request for review on September 1, 2009.  (Tr. 1–4.)  The ALJ's decision therefore became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.  On October 28, 2009, Plaintiff filed the instant action with this Court seeking judicial review pursuant to 42 U.S.C. § 405(g).  Defendant filed an Answer and the Administrative Record on January 4, 2010.

(Doc. Nos. 4, 5.)  The parties thereafter filed cross-motions for summary

judgment.  (Doc. Nos. 7, 14.)

## DISCUSSION

**I.      Standard of Review**

Congress has prescribed the standards by which Social Security disability

benefits may be awarded.  Pursuant to the Social Security Act, a "disabled

individual" under the age of 18 means that the "individual has a medically

determinable physical or mental impairment, which results in marked and severe

functional limitations, and which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(C)(i).

The statute provides a three-step evaluation for determining whether a

claimant should receive benefits.  20 C.F.R. § 416.924(a).  For the first step, the

ALJ must determine whether the claimant is engaged in substantial gainful

activity, defined as work one does for pay.  *Id.*  If the individual is able to engage

in substantial gainful activity, the claimant is not disabled.  *Id.*  If the claimant

does not engage in substantial gainful activity, the ALJ proceeds to the next step.

*Id.*

In the second step, the ALJ "consider[s] your physical or mental

impairment(s) first to see if you have an impairment or combination of

impairments that is severe."  *Id.*  If the impairment(s) is not severe, then the

claimant is not disabled and the inquiry ends.  *Id.*  The impairment(s) is not

severe when it results in "a slight abnormality or a combination of slight

abnormalities that causes no more than minimal functional limitations."  20 C.F.R.

§ 416.924(c).  If the impairment(s) is severe, then the inquiry proceeds to the

final step.  20 C.F.R. § 416.924(a).

In the third step, the ALJ determines whether "you have an impairment(s)

that meets, medially equals, or functionally equals the listings."  *Id.*  "An

impairment(s) causes marked and severe functional limitations if it meets or

medically equals the severity of a set of criteria for an impairment in the listings,

or if it functionally equals the listing."  20 C.F.R. § 416.924(d).  In determining

whether an impairment or combination of impairments functionally equals the

listings, the ALJ must assess the claimant's functioning in terms of six domains:

(1) acquiring and using information; (2) attending and completing tasks;

(3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R.

§ 416.926a(b)(1).  To make this assessment, the ALJ will compare the claimant's

functioning and activities to children of the same age who do not have

impairments.  20 C.F.R. § 416.926a(b)(2).  To functionally equal the listings, the

claimant's impairment or combination of impairments must result in "marked"

limitations in two domains of functioning or an "extreme" limitation in one domain.

20 C.F.R. § 416.926a(d).

Here, the ALJ found that the claimant never engaged in substantial gainful

activity, and that the claimant's impairments were "severe" as defined by Social

Security. However, at the third step in the benefit inquiry, the ALJ found that "[w]hile claimant's impairments are severe, they do not, considered alone or in combination, meet or medically equal any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 29.) The ALJ also found that the "claimant does not have an impairment or combination of impairments that functionally equals the listings[.]" (Tr. 29.) Therefore, the ALJ concluded that the claimant "has not been disabled, as defined in the Social Security Act, at any time from November 23, 2005, the date his Title XVI application was protectively filed, through the date of this decision[.]" (Tr. 29.)

Review by this Court of the Commissioner's decision to deny disability benefits to a claimant is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006). "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as whole.'" *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) (quotation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis." *Gavin*, 811 F.2d at 1199.

"We consider evidence that supports the ALJ's decision as well as evidence that detracts from it, but even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citations omitted). In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ, *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993), and "will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome or because we would have decided the case differently." *Haley*, 258 F.3d at 747 (quotation and citations omitted). The opinions of non-treating, non-examining physicians "do not normally constitute substantial evidence on the record as a whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003)).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen*, 612 F.3d at 1016 (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id.* (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806.

9

## II.    Analysis

Plaintiff poses only one question to this Court for review on her appeal:

"Did the Administrative Law Judge error in refusing to submit additional medical

evidence, as well as post hearing interrogatories, to the medical expert?"  (Doc.

No. 8, Pl. Deanne Sopelle for A.N.S.'s Mem. of Law in Supp. of Mot. for Summ.

J. ("Pl. Mem.") 5.)  This Court concludes that the answer to Plaintiff's question is

no.[2]

First, this Court must point out that a medical expert (aka medical advisor),

such as Dr. Stevens here, is hired by the Social Security Administration to testify

at a hearing for the ALJ's benefit.  As explained by the Supreme Court, "[t]he trial

examiner is a layman; the medical adviser is a board-certified specialist.  He is

used primarily in complex cases for explanation of medical problems in terms

understandable to the layman-examiner.  He is a neutral adviser."  *Richardson v.*

*Perales*, 402 U.S. 389, 408 (1971).  The ALJ, however, is not required to utilize a

medical expert unless certain issues are presented that require additional expert

testimony, such as when there is a dispute regarding a disability onset date and

the medical evidence is ambiguous.  *See* Social Security Rule ("SSR") 83-20 ("At

the hearing, the administrative law judge (ALJ) should call on the services of a

medical advisor when onset must be inferred.");  *Grebenick v. Chater*, 121 F.3d

1193, 1201 (8th Cir. 1997) (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.

---

[2]    Plaintiff does not claim in her summary-judgment motion or memorandum
that there was not substantial evidence in the record to support the administrative
decision.

1995) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.")); *see also* Social Security Ruling 96-6p (stating that updated medical information should be obtained from a medical expert "[w]hen no additional medical evidence is received, but in the opinion of the [ALJ] . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable"); *Richardson*, 402 U.S. at 408 (stating that medical advisers were used in approximately 13% of disability-claim hearings in 1971).[3] With regard to the issues presented to the ALJ at the hearing here, a medical expert was not required to be utilized at the hearing. In other words, if the missing records had been submitted to the ALJ prior to the hearing, there would have been no requirement for the ALJ to elicit testimony from a medical expert at all. The ALJ could have made a determination based on the records and reports before him, without additional testimony from a neutral medical expert.

---

[3]     In addition, "the ALJ [is] not duty-bound to further develop the record by asking the treating physician for more information." *Stormo*, 377 F.3d at 806. It follows that an ALJ is not duty-bound to further develop the record by asking a non-treating, non-examining physician for more information either. Although an ALJ does "have to seek additional clarifying statements from *a treating physician* [when] a crucial issue is undeveloped," *Id.* (emphasis added), this requirement provides nothing about whether statements from a non-treating, non-examining physician are necessary to develop a gap in the record. Further, it is clear that an ALJ does not have to seek such statements without the presence of an undeveloped crucial issue. *Vossen*, 612 F.3d at 1016. Here, as demonstrated in the ALJ's decision, all of the issues were developed and there was "sufficient documentation" for the ALJ to make his decision.

Further, the fact that records were submitted to the ALJ after the hearing did not necessitate the ALJ's utilization of a medical expert in his review of the new records either. Social Security Ruling 96-6p provides that updated medical information should be obtained, from a medical expert, under the following circumstances:

> When no additional medical evidence is received, but in the opinion of the [ALJ] . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> When additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Social Security Ruling 96-6p. "When an updated medical judgment as to medical equivalence is required at the [ALJ] level in either of the circumstances above, the [ALJ] must call on a medical expert." *Id.* Plaintiff's argument is apparently that, as medical evidence was submitted to the record after the hearing, the ALJ was required to consult a medical expert concerning the supplemental evidence. This argument misinterprets the mandate of SSR 96-6p, which only requires an ALJ to obtain the opinion of a medical expert when the additional medical evidence, in the opinion of the ALJ, would change a previous expert opinion that an impairment is not equivalent to a listing. *See Piper v. Astrue*, No. 06-3802 (PAM/RLE), 2008 WL 3368907, at *16 (D. Minn. Aug. 8, 2008) (citing *Nelson v. Astrue*, No. 06-4298 (DWF/SRN), 2008 WL 822157, at *19 (D. Minn. Mar. 26, 2008); *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978-79 (8th Cir. 2003)).

Here, the ALJ received and evaluated the additional records before making his decision, and he apparently did not conclude that the additional records would change the previous expert opinion. Furthermore, this Court has also independently reviewed the additional records and has found nothing to suggest that this information would have changed any expert opinion or altered the ALJ's decision. (For example, *see* Tr. 719-31; Tr. 740-45 (stating that Plaintiff performed in the average range on most of the tests performed).) Therefore, the ALJ was not obligated to obtain a new medical opinion upon receipt of the additional records.

Plaintiff contends that the ALJ should have forwarded the additional records to the medical expert, propounded interrogatories, received answers from the medical expert, and allowed Plaintiff's attorney an opportunity to submit interrogatories in response, because that was the agreed-upon procedure that the ALJ had promised at the hearing. Specifically, Plaintiff complains that her understanding was that after the interrogatories were sent and Dr. Stevens provided her answers that she would "then have an opportunity to also ask Dr. Stevens questions." (Pl. Mem. 4.) She asserts that she "never got an opportunity, therefore, to discover Dr. Stevens' opinion even though [she] had agreed that Dr. Stevens could be at the hearing and could testify." (*Id.*) Plaintiff asserts that she "was relying, at least in part, on what Dr. Stevens might have to say. We never found out." (*Id.* at 5). Essentially, Plaintiff's argument is that by

cutting the agreed-upon procedure for reviewing the additional documents short, the ALJ did not fully develop the record.

In considering whether a case should be remanded because the ALJ did not fully develop the record, the reviewing court must consider whether the claimant was prejudiced or treated unfairly; absent unfairness or prejudice, the court will not remand. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). "Courts typically defer to the judgment of the ALJ with respect to how much evidence is necessary to fully develop the record." *Filipi v. Shalala*, No. 3-93-785, 1994 WL 706692, at *4 (D. Minn. Sept. 30, 1994) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). While an ALJ is required to develop the record fully and fairly, the burden of persuasion to prove disability is on the claimant. *Vossen*, 612 F.3d at 1016. As long as the record is fully and fairly developed and the ALJ makes his decision based on substantial evidence in the record, there is no error.

Here, Plaintiff was provided both a fair hearing and an opportunity to be heard. This is not a situation where the ALJ did not allow a plaintiff a fair amount of time to present her case to the ALJ. The hearing here lasted approximately an hour and a half, with significant questioning of the claimant and Plaintiff. And Plaintiff was in no way precluded from presenting expert testimony at the hearing, which she chose not to do. In addition, the ALJ allowed for the record to remain open to receive additional records before he made his decision. While it is true that the ALJ set up a procedure at the hearing whereby the additional

14

documents would be reviewed by the medical expert and the medical expert

would provide an opinion through the use of interrogatories, nothing in the rules,

regulations, or case law requires the ALJ to follow through with that set

procedure before giving a decision.   This is not a situation where the ALJ sought

and received an opinion of the medical expert without allowing the Plaintiff an

opportunity to cross-examine that medical expert.  Here, the ALJ decided upon

receipt of the additional documents, that additional opinion from the medical

expert was not necessary.

Further, Plaintiff has pointed to nothing in the documents that were

submitted after the hearing that would change any expert or physician's

opinions—in fact, she argued nothing at all in her brief as to the relevance of the

newly submitted documents—and has not explained what specifically she would

have wanted to ask the medical expert or how that questioning might have

influenced the ALJ's decision.  In other words, Plaintiff has not shown what issue

was not fully developed in the record after the ALJ received and reviewed the

additional documents, nor has she shown how she has been prejudiced by the

ALJ choosing to not utilize the medical expert.  The report from Dr. Russell and

Exhibits 13-E, 36-F, 37-F, and 38-F were all entered into evidence and

considered by the ALJ before he made his thorough, 27-page decision.

Therefore, the ALJ satisfied his obligation to fully and fairly develop the record.

Because there is no requirement that the ALJ have a non-treating, non-

examining medical expert further interpret what had already been determined by

the ALJ to be sufficient to make a decision, and because there is substantial evidence on the record as a whole to support the ALJ's decision, this Court recommends that Plaintiff's motion be denied, and Defendant's motion be granted.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 7), be **DENIED**;

2.    Defendant's Motion for Summary Judgment (Doc. No. 14), be **GRANTED**; and

3.    The case be **DISMISSED WITH PREJUDICE**, and judgment be entered.


Date: November 23, 2010              __*s/ Jeffrey J. Keyes*_____
                                     JEFFREY J. KEYES
                                     United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 7, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.